We have 1-8-55462 and 1-8-55910 and 1-8-56346. You did pronounce 7-Eleven correctly. 7-Eleven, I got that right. You nailed that. So before we do the, before we start, you'll help me on that, but before I call it, how do I say that? Serge Haitayan. Oh, okay. Now I don't have to change that in my mind. So we've consolidated these for argument, and basically what, we do have a number of matters here, but we have all the same people, so it's 20 minutes each side, and that includes any rebuttal or whatever, but if we have additional questions, we, you know, we'll take whatever time that we need. And perhaps maybe I can ask, before we start running the clock, I notice at the 7-Eleven table, which I'm saying that correctly, right, I see three people. So are you proposing any division of labor? Okay. All right. That's perfect. That's all I need to know. So go ahead, state your name for the record and your appearance, and we'll be ready to go. Thank you. Yes, thank you, Your Honor. I'm Shannon Liss-Riordan for the plaintiffs. May it please the Court, I would like to reserve at least three minutes of my time for rebuttal, if I may. Your Honors, there can really be no question here that the district court acted improperly in dismissing this case on a motion for judgment on the pleadings. The court acted as though it was reviewing, frankly, an entire trial record, let alone a summary judgment record. It was reviewing a complaint, and the court made a decision, a legal decision, that the plaintiffs couldn't state a claim that they were employees under federal or state law. So you have the federal and you have the state claims, and you're in diversity anyway, so whether the federal claims exist or not, you're still in federal court, right? Correct. So the FSLA claims? FLSA. FLSA, yes. Yeah. All right. If we just go on the pleadings, how have you stated, because we have the Dynamex issue, right, which does not affect those claims, right? Correct. So we have to deal with federal law on that. So how have you stated a claim based on the pleadings? Well, based on the detailed pleadings, there would be enough if the plaintiffs could prove those facts that a court or a jury, it may be a mixed question of law and fact, could determine that the workers were employees under the FLSA. A case that we cited in our reply that was decided just recently by the Tenth Circuit, Acosta v. Janneking, reversed a district court's dismissal of a similar case involving allegations by the Department of Labor that franchisees had been misclassified as independent contractors under the FLSA. If you look at all of the various factors that courts look at under the economic realities test, there was plenty in that complaint that made out a pleading of that claim. Well, if we presume them to be true, what are the factors that you put out in the complaint that say you could state a claim? Well, the fact that there was a great deal of control by the defendant over the plaintiff's work and many of the other factors under the FLSA. They worked for long periods of time. This isn't a plumber coming into your house on a one-time basis to fix your sink. There's the fact that this was not a job that required a great deal of prior experience or education. Pretty much you put down your money and you could work at one of these 7-Eleven stores as a franchisee, which they alleged they were really effectively working as managers and store clerks. They were running these stores. The other FLSA factors, they used the stores were provided by 7-Eleven. 7-Eleven had an extremely detailed operations manual regarding every last detail about how the operations were supposed to run. I mean, the courts have looked at these variety of factors under FLSA cases, but the most primary one that they've looked at has been the amount of control. And there was no question that there was a lot of allegation in the complaint regarding the extensive control. So for that reason alone, it was really inappropriate for the court simply to decide on a motion for judgment on the pleadings. There's no way they could establish their status as employees. Well, you could conceivably, let's just assume that just for hypothetically for the moment, that we agree with you on that. You still could get knocked out at summary judgment, right? Sure. And it could be a different, the dynamics, dynamic is not going to affect those claims as of now, as far as we know. Correct. The federal claims have a different standard from the state law claims. Correct. So looking at the state law claims, I mean, right now we've got Vasquez versus Jan Pro, that case argued two months ago before another panel of this court presents the issue of whether Dynamics applies to franchisees. Yes. So we're going to hear something on that. And I believe that counsel on both sides here are the same counsel on that case, right? I'm plaintiff's counsel, defense counsel is not on that case. Okay. So. Although he submitted an amicus brief in that case. All right. So do you anticipate that the other panel's decision in this case will affect this case? And if so, how? Yes, that decision could very well affect this case. It's a similar situation. There are different nuances to that case that aren't present here, however, because in that case there's an additional level of argument that's not presented here. In that case the defendant used what's called a multi-tier scheme where there's a company at the top and then there are so-called master franchisees in the middle and then there are the workers. So in addition to the arguments you have here in that case, there are also these arguments about whether the company on the top can be liable for misclassifying workers for whom there is no direct relationship. Here there is a direct relationship. So I don't know on what ground. Depending on what that says, that possibly this would be vacated and go back and allow the district court in the first instance to apply Dynamex to the state court claims. Correct. I want to go back one thing on the FLSA that I didn't quite. The way that it seemed like the allegations of control in the wage and hour complaint appeared to be based on the terms of the party's agreements as opposed to some unwritten policy that contradicts the terms of the agreement. So if we were to conclude that the relationship created by the franchise agreement is not an employment relationship under the FLSA, since that's how it's sort of stated, can we affirm the dismissal? No. I mean, in addition to the Acosta v. Janneke case from the Tenth Circuit, there are other cases we've cited including Scantlin v. Knight Enterprises where the Eleventh Circuit reversed a grant of summary judgment for the defendant on the question of employee status under the FLSA. If you look at the allegations in the complaint, yes, there is a lot of reference to the agreement and control that's built into the agreement itself, but there are also a number of allegations that just simply state that 7-Eleven had a great deal of control over the work of the plaintiffs and the franchisees. And of course, labels don't matter. I mean, this Court made clear, for example, on Alexander v. FedEx and Slayman v. FedEx, the fact that there's a contract that says that the workers can do the work however they please and they're to be classified as independent contractors is not the end of the story. A court has to actually look at the relationship itself. And so the complaint here is not limited to simply saying the contract says this and so therefore there's a lot of control. There are a lot of more bare statements just simply of the control. I want to drill down on the injunction because you've got two different judges. The first one is Judge Walter and then the preliminary injunction was in front of Judge Fischer? Yes. Okay. Fischer was a C. She's a lady. I'm not. The Dale Fischer, the female Fischer. She concluded that there was no irreparable harm because the claims are not waivable, then the claims aren't waived. So I want to – I know that there's some indication that there's some April dates coming up as far as this would go. So is it – let's say Judge Fischer was in a different situation at the time when she had Judge Walter's decision, which seemed to have affected her analysis under the preliminary injunction. And if that were to go back and be analyzed under Dynamics, is it conceivable that Judge Fischer could maybe not have abused her discretion but there's still an irreparable harm issue because of – if all this gets delayed to consider all these other cases, how does that affect your clients? Yes. So, Your Honor, the reason why we filed that as a preliminary injunction was because of the procedural posture of the case where we weren't in a district court. If we had been in a case that was pending at a district court, I would have filed a motion under Rule 23D, as courts have often issued orders denying the right of defendants to go around collecting releases when there's a putative class action pending. But you're not raising that here. Well, we did mention below and we did mention here that – But you have a footnote. You're not alleging that separately. You're challenging the injunction here. Well, I'm simply explaining the reason why, in an abundance of caution, we set forth a preliminary injunction standard – As opposed to 23D. But really what we're asking for is akin to a 23D – what would have otherwise been a 23D request. And here is the problem. So typically, often, courts have stepped in, controlled such communications and not allowed the collection of these releases while a case was pending. They often do that, recognizing that it gets very complicated to try to unwind these releases after the fact. Now, I did note that in a similar situation that we have in a Massachusetts case, raising pretty much these same claims, Patel v. 7-11, the court there issued a more nuanced decision when we did move for a Rule 23D protective order. And essentially the court said, look, if you eventually win and these plaintiffs are, in fact, employees, he all but said, I'm not going to enforce these releases. I'm sure 7-11 is going to challenge that later. They already have started challenging that. Because of the difficulty in knowing whether these will be able to be unwound later, that's why I urge there's irreparable harm, because right now they don't know whether they need to sign these releases in order to carry on their work with 7-11 past April. And that's why we asked to have this heard on an expedited fashion. Well, okay, let's say they sign their releases and then you win down the way and it's determined that they're employees. All right. Would that not then be an enforceable release? Well, I'm not 100 percent sure about that. I'm certain that 7-11 will argue they signed the release. There was this case. They knew that it was there. And 7-11 could well ---- So they would argue waiver? Yes. Yes. Which is why we're asking for a ruling before they're put in the position of having to make that choice, both the plaintiffs as well as the putative class members in this case. Okay. So the irreparable harm to your clients is that they have to make a decision before the case is over. And if they want to continue to do business, they have to sign the release. And then they run a risk of, if they sign this release, that it might not be found unenforceable and they could get sued? No. So if they sign the release ---- Then they're not in the class. Well, it could moot out the case. And we've cited a case for the fact that mooting a case is irreparable harm. I expect that 7-11 would argue that the case is now moot because there are no plaintiffs who can bring the claim. If they don't sign the release because they don't want to take their chances and they want to press on with this claim, then 7-11 is going to say you can't work for us anymore, which we've also said is overtly retaliatory because they're saying that only franchisees who agree not to sue us anymore on this can continue working for us. That's just the definition of retaliation. And actually, I think Judge Fischer noted in one of her orders, she seemed to recognize there's some difference between the state law claims and the federal claims on that score. Is your irreparable harm argument any different now that there's Dynamex and JANPRO? Does that strengthen or weaken your argument? Or how does it affect your argument of irreparable harm? Yeah, well, this case came in ---- I mean, this case was filed ---- the injunction case was filed after Dynamex. So, again, as I just explained, even if we end up winning, and I believe under Dynamex the plaintiffs here should win, but I understand that's going to take some time before the case is fully adjudicated, there is simply an unknown question now as to whether or not 7-11 will prevail in its argument that, well, too bad, they signed the release, you know, full well knowing that this case was out there, but they signed the release. If there is some indication from this court, as the federal district court judge in Massachusetts seemed to give some indication that, look, if you end up winning down the road, these are unlikely to be enforced, that would at least give them some comfort in moving ahead, but right now they're just really in an untenable position. If they signed the waiver and they pursued their claim based on Dynamex and they have a credible claim, but they lose ultimately, would they be in breach of contract for having violated the waiver? Would they be in breach of contract for having, I'm sorry? Having signed the waiver, but continued to litigate or aid in the litigation to reclassify as an employee? Well, I don't know the answer to that. 7-11 has been extremely aggressive in this litigation, and I have no doubt that they will come after them in any way that I think they can. Though I think they're in a very tough bind here, which is why we sought this injunctive relief and now this expedited hearing on this question. Well, but we're reviewing the injunction for abuse of discretion. So I don't know that we can, let's say even we agreed with you, that that appears that maybe the irreparable harm component is different than what the district court did. I mean, we can't really enter a new injunction here. Well, I mean, a couple of things. One, we did point out that the court below did not really apply the right standard in holding the plaintiffs to having to prove likelihood of success on the merits when that's not the standard in the circuit. There's also the concern that the court, I would say the district court, abused her discretion in just simply ignoring or not really grappling at all with our arguments that these are wage claims. And she cited only two cases involving franchisees who had challenged their being put in the position of having to release other types of claims in order to renew their contract. And as explained in our briefing, it would just really be unheard of for an employee to have to waive any wage claims against an employer in order to keep their job. The judge below just did not grapple with that. And I would say that that's an abuse of discretion. Okay. So just tell me exactly what your clients are going to face if we were to say there is no abuse of discretion. When's it going to come up? When are they going to have to make these decisions? So if we define no abuse of discretion, then when is it going to come up? There's different timing. Well, April is generally the date. And I apologize. I looked at the record and I realized I don't know the exact date in April. I know that their contracts, their current contracts expire in April. I don't know if it's the beginning of April or the end of April. It might be the middle of April. So it's very soon. Again, as a practical matter, if this Court were simply to remand to the district court, there would be a lot of work to try to then get this sorted out before such a date. Again, if there were some indication from this Court that it would be problematic for them to be put in this position, that at least would help. But I would urge the Court to issue a ruling that makes clear that plaintiffs shouldn't have to be put in this position, even perhaps that it could be unwound later, although, again, that's just been problematic in other cases. But if the Court were to say something of that sort, like the Court in Massachusetts did, that might put us in a better position. I do want to reserve time, so unless you have more questions now. Thank you, Your Honors. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Norman Leon for 711. Your Honors, I'd like to start out by addressing the preliminary injunction issue. And Your Honor asked what position the plaintiffs will be in if they refuse to comply with their existing contractual obligation. And the short answer to that is they're going to be in the exact same position they agreed to be in when they entered into these franchise agreements back in 2004. The franchise agreements that they were given were never perpetual. They were for a group of years. And if they wanted to renew their franchises with 711 at the expiration of those agreements, they would sign a general release. That's why this case is so dramatically different in every other case that In all of those cases, the defendants created a release after the fact, either after a lawsuit was filed or a motion for class certification had been filed, to try to either diminish or release liability that was presented by that case. That's not what this is about. This case is about enforcing an existing contractual requirement, which has been enforced by every single court in the country that has taken a look at the issue, that if you want a new contract when your existing one expires, you sign a general release. Plaintiffs have never questioned the legitimacy of that requirement as a matter of law. The only issue that they've raised is that this case should be treated differently than every other case in the country that's ever addressed this issue because this involves putative wage claims. But what if they're found to be employees? What are you going to do? And they signed this. Are you going to say that they waived it? It makes no difference at all, Your Honor. California law is crystal clear that wage claims can be released just as any other claim. The only thing that happened in Boston that counsel was referencing, and by the way, that court denied their motion for preliminary injunction for the exact same reason that Judge Fisher denied their motion for preliminary injunction. It concluded that if the claims were not releasable, they would not be released. So there was no reason for the court to deal with that issue on a preliminary injunction. And that's the exact same issue here. There's no need to deal with this on a preliminary injunction. As Judge Fisher succinctly noted, if the claims can't be released, they're not released. The reason that the Massachusetts court expressed some hesitancy about the enforceability of the release is because the court read the release quite incorrectly. The only thing that they agreed to respectfully submit has to be a prospective release. And that's not the language of the release. In terms of the releasability of wage claims, even that court acknowledged that wage claims can be released. And the law in California is no different. All right, but let's say that this litigation proves that your waiver is unconscionable. Correct. What in the interim? Are you going to try to enforce it? Are you going to say that they waived it? If they sign it, they're waiving it, right? That's it? They're out of the lawsuit? Your Honor, if they sign a release. I'm just trying to figure out how this is not a Sophie's choice here. Which child am I going to save? You know, that's the. Yeah, that's quite a false narrative that plaintiffs have presented about what this case presents. If they sign the release, it's our position, of course, that the release is fully enforceable, and we think that is backed up by a substantial body of law. If a court at a merest determination decides that the releases are for some reason unenforceable, then, of course, the releases would be stricken and the claims would not be released. That's the whole purpose of the unconscionability statute, and that's the basis. What happens in the meantime? How can they continue in the case? They can't, right? If they sign their release, they're out of the case. Well, that's something that we would raise to the district court, assuming this case went back to the district court. Yes. But, of course, the district court can decide that. They're simply going to hold that matter in abeyance until there's a determination as to whether or not their releases are enforceable. I don't think that's something that the court would resolve at a motion to dismiss. It's not going to be before the court on a 12B6 motion. It would be something that the parties would raise at the summary judgment level. So there's no immediate harm here at all. And I just want to circle back to the unconscionability standard because it's important to realize how that works. It doesn't require that somebody come into court before they sign a contract and seek a declaration that the contract is unenforceable. The statute, by its terms, California Code Section 1670.5, looks at the contract at the time it was made. So they can come back into court, say this was procedurally unconscionable and substantively unconscionable at the time that we entered into it, and, therefore, it should not be enforced. Unless the court has any questions. Well, I may have to come back to that. But right now we have why shouldn't we vacate and remand in the wage in our next? Well, I don't think that vacater is appropriate because there's been no determination yet that. Well, we have to wait for JAMPRO, but let's see what JAMPRO does. JAMPRO could simply end up remanding the case to the district court as well. That's what happened in another franchise case in this court. So if JAMPRO remands, what should we do? We have to look and see what it says. A couple of pieces to that, Your Honor. We agree that remand is necessary as to the state law overtime claim because that claim falls within the scope of the issues that Dynamics said was covered by its new ABC test. However, the district court's dismissal of the FLSA claim obviously is not impacted by Dynamics. That's something that the parties agree on. And we think that the plaintiff's expense reimbursement claim, even if Dynamics applies retroactively, is not impacted by Dynamics because those types of claims are not reached by the Dynamics test. Well, do you think Vasquez is going to affect this case? JAMPRO, Vasquez v. JAMPRO, is it going to affect this case? I guess the issue presented is whether Dynamics applies to franchises, right? That's one of the issues that's presented in that case, Your Honor. There's a lot of cases before this court that raised the Dynamics issue in the franchise context and the retroactivity issue. Does JAMPRO affect this case? It may affect this case, Your Honor. But we don't know what the court's going to do with that, if it's going to reach that issue on the merits or if it's going to remand the matter to the district court in the first instance. Going back to the preliminary injunction, in the district court you successfully argued before Judge Fischer that the decision by Judge Walter had preclusive effect for purposes of analyzing the preliminary injunction. If we were to vacate Judge Walter's decision in light of Dynamics, his ruling would no longer have preclusive effect. Should we then vacate and remand on the second case? I don't believe that Judge Walter's dismissal of Hattayan 1 had any impact on Judge Fischer's entry. Did you argue that it had preclusive effect? Did you argue res judicata? I argued res judicata in a motion for judgment on the pleadings as to the retaliation claim that the plaintiffs put forth. But the state retaliation claim still exists. But the determination that there was no... only to mention to the court that the plaintiffs' objection to the releasability of the wage claims really isn't something that warranted the court's attention because there were no live wage claims. But if you take a look at the court's ruling, that wasn't a predicate for any of the court's findings. Well, she mentions it and then she cites a res judicata case. The Eichmann case.  Yes. But, again, in analyzing the likelihood of success, Your Honor, the serious questions test, which plaintiffs drop a footnote on in their opening brief, there is no part of the court's determination that hinges on whether or not the plaintiffs had valid wage claims. The court took a look at the issue from the perspective of the enforceability of the releases. And, again, every court in the country, including this court in the GNC Lee case, has upheld the enforceability of the release requirement. The only issue that concerned the wage claims was whether or not that warranted different treatment in this case. That's the plaintiff's position. And Judge Fisher rejected that. She said that the plaintiff's arguments were not persuasive. And I think that's an important point to make here because I believe that plaintiff's appeal misconstrues the nature of this court's review. This is not de novo. This is an abuse of discretion review. And aside from their single footnoted argument that Judge Fisher did not correctly apply the serious questions test, which we think is incorrect, there's no assignment of error in either their opening brief or their reply brief. All they do is repeat the exact same arguments they made to Judge Fisher and ask this court to come to a different conclusion. And that's not what is done on preliminary injunction motions. Well, it is abuse of discretion, and I agree with you on that. But Judge Fisher concluded the plaintiffs would suffer no irreparable harm because, quote, if the claims are not waivable, then the claims aren't waived, unquote. Do you agree that if the plaintiffs were to sign franchise renewal agreements, the district court could not dismiss the wage and hour case based on the waivers in the agreements without first determining whether the waivers are unenforceable? The court would first need to determine whether or not they're enforceable. Correct, Your Honor. If there was a challenge to the enforceability, obviously the court could not dismiss the plaintiffs' claims, which only underscores, again, why there is no irreparable harm here. So suppose the franchisees were to sign the renewal agreements as is and the district court were to conclude the waiver is enforceable, could the franchisees be found liable for breach of contract for challenging the enforceability of the waivers? Not that I'm aware of, Your Honor. If that was the standard, then anybody that challenged the enforceability of an agreement as being unconscionable would be in breach of contract. I'm not aware of any case that has ever taken that position. But what we said, that Judge Fischer would have to determine whether they were enforceable, right? Correct, Your Honor. And so if Judge Fischer said they're enforceable, could the franchisees then be in breach of contract for challenging the enforceability of the waivers? I don't see how, Your Honor. Again, any party can challenge the enforceability of an agreement that they sign if it's unconscionable. Now, we ended up in two courts, and it seems that it's so. . . It appears the plaintiff filed the second case only because the first case was on appeal at the same time. And so it ended up in . . . So assuming if we were to vacate and remand both cases, would you agree that plaintiffs could seek a preliminary injunction and corrective notice in the first case, thereby eliminating the need in the second case? Or what if so, or not? We had no objection to that, Your Honor. And in fact, they filed the second case as a related case. Judge Walter determined that the case was not related, which is why it ended up with Judge Fischer instead of Judge Walter. That was my question as to how this happened. Yes, that's how it happened, Your Honor. It doesn't seem it's terribly efficient, but it doesn't really also have the marks of judge shopping on either of your parts. It just seems like the timing and one going on appeal, and then when you file something, I mean, I don't know if they're on a wheel and how they do it. Your Honor, that's not something that either of the parties did here. Again, that was a determination by Judge Walter. And frankly, I think that notwithstanding Judge Walter's determination that the case was not related, the issue does end up in front of him in some way, shape, or form. Because if this case goes back to the district court, the releases are going to be an issue that's going to be raised in the case, so obviously he's going to have to deal with that issue. And I question why the second case in Judge Fischer's courtroom would need to still go on at that point. So if we disagreed with you on the irreparable harm, what can this court do about it? This court can remand the matter to the district court for further consideration. Although I will point out that as to at least two of the other four elements that are required to obtain a preliminary injunction, the balance of harms and the public interest, Judge Fischer ruled that both of those factors also went in 7-11's favor. And again, on those factors as well, plaintiffs present no assignment of error whatsoever. There is nothing in their brief that challenges Judge Fischer's rulings on those requirements. So the corrective action that they're talking about here under 23D? That's what you mentioned, Your Honor. That's not something they raised in the brief, but that was raised in the district court. Well, that's what I was asking. Is that before us? No, Your Honor, it's not. It's mentioned in a footnote or something. It's not even really mentioned in a footnote, Your Honor. The only time, and I went back and checked the brief and did a search to make sure I wasn't missing anything, the only time the phrase corrective notice appears is in the discussion of the procedural history of the case where the plaintiffs note that the district court denied their motion for corrective notice, and properly so, even if it was before the court. And honestly, I'm not sure that the court would have jurisdiction over that, even if they had raised the issue, because it's completely ancillary to the underlying ruling on the preliminary injunction. But that aside, Judge Fischer made the factual finding that nothing that 711 did in connection with the presentation of the renewal franchise agreements was in any way misleading or coercive, and nowhere in plaintiffs' brief do they challenge that as a clearly erroneous factual finding. Can you help me on your perspective on, obviously you have the state claims, you have the federal claims, and the FLSA claims where there was judgment on the pleading. I asked appellant that it seemed to tie it to the franchise agreement. Can you tell me your perspective on this, on whether, well, I mean, obviously you want that affirmed and you want those out. I understand that. But can you respond to whether it needs to go to summary judgment or how that would be any different than what we have here or how your perspective on that? Thank you, Your Honor. And I don't believe that Your Honor really got an answer from plaintiffs on where this case or where their allegations differed from the franchise agreement. And Your Honor is right, but it doesn't just seem like their allegations are premised on the franchise agreement. If you take a look at the complaint, they are expressly premised on the terms of the franchise agreement. They repeatedly quote the franchise agreement. They don't make any allegations that are outside its scope. I know they take Judge Walter to task and say that he somehow contrasted their allegations with the provisions of the franchise agreement. I'd like to make two points on that, if I could. First, given the fact that their complaint purported to recite the terms of the franchise agreement, there would have been no error if Judge Walter, in fact, did that. The law is clear that when the allegations of a complaint conflict with the terms of a document attached to the complaint, the terms of the document control. Plaintiffs never question that issue, nor do they cite anything to the contrary. Secondly, and more importantly, Your Honor, we made this point in our opposition. It is our main argument. You've now been given about 90 pages worth of briefs from the plaintiffs and received close to 18 minutes worth of arguments. They have yet to identify a single instance where Judge Walter disregarded their allegations in favor of anything. There's nothing there. And it's important to remember that in dismissing this claim and concluding that there was no issue with respect to the control element, Judge Walter was not writing on a clean slate. He had before him the opinion of the California Department of Corporations, which discusses the extensive controls that franchisors may exercise. He had the Syslaw opinion, which addressed the exact same franchise system, 7-11, and concluded, taking a look at the exact same allegations that the plaintiffs make in this case, that those allegations of control did not constitute control over the means and manner. And that's the only element of the economic reality test, by the way, that plaintiffs challenge on this appeal. And, of course, he had the Patterson opinion, which we haven't had a chance to discuss. But Patterson took a look at Syslaw and characterized the 7-11 franchise relationship as one which, in his words, in the court's words, in which the franchisees possessed virtually all operational control. That's the California Supreme Court. And that's the legal predicate on which he made the ruling that the FLSA correctly, the FLSA claim, could not survive. I would like to address with your honors the issue of the interplay between Patterson and Dynamics, because it touches upon both of the plaintiffs' claims in this appeal, the appeal of Judge Walters' ruling that the allegations of control were not sufficient to state an employment relationship, and the impact, if any, that Dynamics has on this appeal. And we do understand that the applicability of Dynamics, including whether or not it applies retroactively, is something that does need to be remanded because there's been no record developed on that. Well, that's true, but it seems like I'm not sure your argument would be great on that because they applied it retroactively in Dynamics. So how do you argue that it wouldn't be retroactive here? There was no discussion of retroactivity in Dynamics at all, Your Honor. The issue did not come up. But Dynamics itself applied retroactively to the parties in that case, right? Correct, Your Honor, but the California Supreme Court has made clear in the estate of props which we cited and the appellate court opinion in Bearden that before a judicial opinion can be applied retroactively, there needs to be an individualized analysis in terms of whether or not somebody relied on the prior state of the law. Obviously, that never took place here because the Dynamics opinion did not come out until after Judge Walter entered his order granting 711's motion for judgment on the pleadings. So that is something that we would need to address in the trial court. In addition, we would need to address the implications of plaintiff's view on Dynamics' application and what Prime B means because plaintiffs take the position that simply because a franchisor operates company-owned locations in the state, it's an employer. If that's the case, if that's the standard in California, then virtually every franchisor is going to wake up tomorrow and be the employer of its franchisees because virtually every franchise system operates company locations in the state. California can be surprising. I don't think that it would be appropriate to conclude that the California Supreme Court found that you needed to take the contemporary realities of franchising into account when considering whether one employment relationship existed and in Patterson and that you need to ignore those exact same realities in determining whether or not another employment relationship existed. I know my time is almost up. Let me find out if my colleagues have any additional questions. Do you have any additional questions? No, thank you. Very helpful. All right, you can make a 30-second comment. I did want to note that assuming this matter goes back, and it's obviously going to go back in some form, that we don't think that vacating Judge Walter's ruling is appropriate unless and until there's been a determination that Dynamics applies retroactively and that it applies to these claims, and that hasn't happened yet. So remand would be appropriate, but we don't believe that vacater would be appropriate. Okay, thank you for your argument. Appreciate your time. Your Honors, let me first address quickly on this injunction question. You had a lot of questions regarding the irreparability. And so what I'm hearing 7-11 saying is that even if we win on the argument that the franchisees are employees, they're still going to argue that this release was valid, which is why there is irreparable harm here, because there is a risk that we could lose on that and that the plaintiffs and the putative class here really are facing this Hobson's choice, this Sophie's choice. So that only strengthens the reason why something needs to be done now before they're faced with that choice. I want to mention briefly about the Jan Pro case. You've had questions about whether or not the panel's ruling in that case might affect this case. Well, I'm wondering if it's possible. It looks like, well, I don't know. We haven't conferenced on this, so we don't know. We'll talk after we get out of court. But if hypothetically we wait for Jan Pro and decide that Jan Pro, whatever direction Jan Pro gives and that it has to go back, can the injunction case, does it have to be handled along with that, or can that be handled separately? Well, I mean, they are docketed as separate cases. The injunction issue, as I've explained, is a pressing issue. If it had to go back down in order to be decided before April, there's obviously a lot of work that would need to be done quickly. There could be another emergency appeal. So I would urge the court to take that into consideration in determining how to proceed here. I do want to mention, though, with Jan Pro, that case was briefed before Dynamax. The parties were permitted to submit briefer supplemental briefs after Dynamax. But in this case, the parties have fully briefed the Dynamax issue. So I don't know what the panel there is going to do. The panel there may remand it hadn't been briefed before the decision. We don't know either, but we probably have access to know more than you do. Right. I will say that I just want to comment briefly on 7-Eleven's counsel's last argument about every franchisor in California might be affected if Dynamax were held to apply to franchises. I mean, I think the fact that California Supreme Court twice cited two cases about franchisors who had been held to be employees I think is telling. It cited two cover-all decisions from Massachusetts, one of which counsel and I argued in Massachusetts, and the court held that the franchisees were employees, and Dynamax cited that if 7-Eleven or other franchisors have a problem with this, it's not an issue that a court can, as a policy matter, undo what the California Supreme Court has done. That's an issue they could take to the legislature. In fact, they tried to take that to the legislature in Massachusetts and were not successful. They didn't get a carve-out for franchisors. Okay. Your time is up. Unless my colleagues have any additional questions, that will conclude. They do not appear to. I want to thank you both for your arguments in this case. You're clearly familiar with the law and the procedures and the facts of these cases, and that is helpful for us, and it's always a pleasure to have lawyers that come so well prepared to court. So thank you both. Thank you, Your Honor. Thank you. This matter will be submitted. Both matters or all of them.
judges: Fisher, Callahan, Owens